## Commonwealth v. Feingold

*Leonard Feingold, pp.*, for petitioner.
*Sheldon Farber*, for respondent.

TREDINNICK, *J.*, March 5, 1975—Leonard Feingold, defendant in the earlier of these two support matters, petitioned this court to conduct a rehearing on the issue of his liability for support of his wife, Mary Feingold; vacate its orders of December 22, 1970, and June 26, 1973; remit arrearages; and, alternatively, reduce the existing order on the basis of new circumstances. Subsequently, he initiated the second action seeking support for a child in his custody from Mrs. Feingold. For clarity, we will refer to Mr. Feingold as "defendant," and Mrs. Feingold as "relatrix," throughout this opinion.

As succinctly as can be stated, the facts are as follows: On October 28, 1970, a petition for support was filed, resulting initially in an agreed order entered December 22, 1970, directing defendant to pay $140 per week for the support of relatrix and two children, Eric and Jennifer. Enforcement of the order was an ordeal. Defendant was brought before the court or the Domestic Relations Office on attachment six times during the subsequent 18 months.

A petition to reduce was filed October 13, 1972. Relatrix countered on November 29, 1972, with a petition to increase. On April 3, 1973, a hearing was held before the late Judge John R. Henry, who entered an amended order on June 26, 1973, requiring defendant pay $120 per week for the support of relatrix and one child (defendant had secured custody of one of the couple's children, Eric) retroactive to April 3, 1973. Defendant appealed that order to the Superior Court.

While the appeal was pending, defendant filed a petition to vacate the order and remit arrearages. The petition was dismissed November 16, 1973, on the ground that this court was without jurisdiction during the pendency of the appeal. The order preserved defendant's right to refile "if deemed appropriate upon disposition of the appeal and return of the record to this Court." Nonetheless, on the day of argument before the Superior Court, December 1, 1973, defendant filed a petition to reduce support and remit arrearages. The petition was summarily dismissed. By this time defendant was proceeding in propria persona, as he has continued to do since.

On February 7, 1974, the Superior Court affirmed Judge Henry's order per curiam: Com. ex rel. Feingold v. Feingold, 228 Pa. Superior Ct. 813 (1974).

Defendant then filed an action in the United States District Court naming as defendants this court, the Pennsylvania Attorney General, the Montgomery County District Attorney and the Chief Desertion Officer of Montgomery County. The subject of this suit was the constitutionality of the Pennsylvania statute authorizing support. The proceeding terminated upon an agreement wherein all parties (including relatrix) agreed that defendant should refile in this court a petition "presenting his claims that the present support order

. . . was unconstitutionally based, was entered on the basis of impermissible criteria, and/or in any event should be modified by reason of changed circumstances." (See paragraph 1, agreement of April 30, 1974 (exhibit A to defendant's petition).) It was further agreed: "That although the defendants do not concede the validity of such claims, they will not oppose a prompt hearing on the merits thereof." (See paragraph 2, agreement, supra.) As a result, defendant, on May 10, 1974, filed the petition now under consideration. On July 15, 1974, he also initiated a separate proceeding, docketed at 90 January term, 1974, seeking support from his wife for Eric Feingold, the child who had for some time been in his custody. The matters were consolidated, and a hearing was conducted by the undersigned January 2-3, 1975.

The precise issues raised by the pleadings appear to be as follows:

(1) Should the orders of December 22, 1970 and June 26, 1973, be vacated?

(2) Should the present support order ($120 per week) be reduced?

(3) Should any arrearages be remitted?

(4) In the companion action, should an order of support be entered against Mrs. Feingold for the support of her son, Eric?

## THE PETITION TO VACATE

Defendant's assertions in this regard are: (a) the nonsupport action against him was initiated under the Act of June 24, 1939, P.L. 872, sec. 733, as amended, 18 P.S. §4733,[1] which is unconstitution-

---

1. For the enactment under the new criminal code see the Act of December 6, 1972, P.L. 1068 (No. 334), sec. 1, 18 Pa.C.S. §4322.

ally discriminatory against males; (b) decisional law establishing a difference between conduct of males and females which will defeat entitlement to support was applied to his case and violated his constitutional rights; and (c) under the facts of this case relatrix has no right to support.

(a) *Constitutionality of the Statute.*

There is a serious question as to whether this issue is present in the case at all, since it is totally unclear whether the support proceedings against Mr. Feingold were initiated under the criminal act cited above or the Act of June 24, 1937, P.L. 2045, sec. 3, as amended, 62 P.S. §1973. The court is inclined to believe the latter was utilized. Nevertheless, we will assume for present purposes that the criminal act is involved, as we are convinced defendant's position is totally without merit for several reasons.

First, the constitutional issue was raised before the Superior Court on defendant's appeal from Judge Henry's order. Relatrix urged that court to disregard the issue since it had not been asserted before the lower court. We assume the Superior Court agreed, since it is unlikely that an appellate court would treat a constitutional issue without an opinion. Nevertheless, some finality must be achieved in judicial proceedings. Since defendant had ample opportunity to assert this defense heretofore and failed to do so, he cannot do so now: Commonwealth ex rel. DeMedio v. DeMedio, 210 Pa. Superior Ct. 520, 233 A. 2d 609 (1967); Commonwealth ex rel. Johnson v. Johnson, 181 Pa. Superior Ct. 172, 124 A. 2d 423 (1956).

In any event, the issue has been clearly and definitely decided. In Commonwealth ex rel. Lukens v. Lukens, 224 Pa. Superior Ct. 227, 303 A. 2d 522

(1973), it was held that the provision defendant challenges violates neither the equality of rights amendment to the Pennsylvania Constitution[2] nor the equal protection clause of the fourteenth amendment to the United States Constitution.

*(b)  Constitutionality of Decisional Law Differentiating Obligations of Spouses on Separation.*

The basic principle of the Pennsylvania equal rights amendment is that "[t]he sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities.": Henderson v. Henderson, 458 Pa. 97, 101, 327 A. 2d 60, 62 (1974). Traditionally, Pennsylvania case law has held that where a husband leaves the marital domicile, he is obligated to support his wife unless he can establish that he

2.  "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.": Pa. Const. Art. 1, §28 (adopted May 18, 1971). (It should be noted that some confusion has arisen regarding the correct citation of this amendment. Both lower and appellate courts have cited the amendment as Art. 1, §27. See, e.g.: Commonwealth v. Butler, 458 Pa. 289, 328 A. 2d 851 (1974); Henderson v. Henderson, 458 Pa. 97, 327 A. 2d 60 (1974); Hopkins v. Blanco, 457 Pa. 90, 320 A. 2d 139 (1974); Conway v. Dana, 456 Pa. 536, 318 A. 2d 324 (1974); Kaper v. Kaper, 227 Pa. Superior Ct. 377, 323 A. 2d 222 (1974); Wiegand v. Wiegand, 226 Pa. Superior Ct. 278, 310 A. 2d 426 (1973); Commonwealth ex rel. Lukens v. Lukens, 224 Pa. Superior Ct. 227, 303 A. 2d 522 (1973); Hess v. Hess, 123 Pitts. L.J. 4 (1974); Norris v. Norris, 63 D. & C. 2d 239 (1974); Frank v. Frank, 62 D. & C. 2d 102 (1973); DeRosa v. DeRosa, 60 D. & C. 2d 71 (1972); Corso v. Corso, 59 D. & C. 2d 546 (1972); Employment of Parole Officers, 57 D. & C. 2d 371 (1972); Kehl v. Kehl, 57 D. & C. 2d 164 (1972). Apparently, only Mr. Justice Roberts, in his dissenting opinion in DiGirolamo v. Apanavage, 454 Pa. 557, 312 A. 2d 382 (1973), has cited the amendment as Article 1, section 28, which our research indicates, is the proper citation.)

has grounds for divorce. See, e.g.: Commonwealth ex rel. Krouse v. Krouse, 221 Pa. Superior Ct. 13, 289 A. 2d 233 (1972); Commonwealth ex rel. Iezzi v. Iezzi, 200 Pa. Superior Ct. 584, 190 A. 2d 334 (1963). On the other hand, where a wife withdraws from the marital domicile, "[s]he need not establish facts which would entitle her to a divorce; it is sufficient to justify a living apart if she shows *an adequate reason in law.*": Commonwealth ex rel. Darges v. Darges, 202 Pa. Superior Ct. 330, 332, 195 A. 2d 847 (1963) (emphasis added). Since the wife need not prove grounds for divorce to retain her marital rights, a double standard of proof appears to exist, raising a serious question as to the validity of that body of law under the equal rights amendment. See comment, "The Support Law and the Equal Rights Amendment in Pennsylvania," 77 Dickinson L. Rev. 254 (1973). Thus, in an appropriate case, the issue may very well require a restructuring of the procedural and/or substantive law pertaining to entitlement to support. However, this is not that case.

Defendant's obligation to support relatrix was determined before adoption of the amendment; the first order was entered December 22, 1970. No controlling decision has been rendered requiring retroactive application of the amendment.[3]

Furthermore, the issue did not arise until the present hearing. Defendant not only failed to contest his liability initially, but also failed to do so before Judge Henry in 1973. Instead, defendant simply asserted he was entitled to a modification of

---

3. In Wiegand v. Wiegand, supra at 286, n.7, the court mentioned that it did not reach the retroactive effect of the equal rights amendment.

the order and remittal of arrearages. On principles of finality, discussed heretofore, he is now barred: DeMedio, supra; Johnson, supra.

Finally, the evidence of the present hearing establishes that defendant separated from his wife and children because he was having an affair with another woman. Thus, whatever criteria might be determined as applying equally to departing spouses in view of the amendment is immaterial to the case at bar. Defendant cannot meet either criterion—he had neither "adequate reason in law" to leave nor grounds for divorce.

(c) *Relatrix's Entitlement to Support*

As mentioned previously, defendant did not question his obligation to support relatrix until the present hearing; there was no such assertion during the original proceedings or the proceedings to modify. The contention may not now be considered. Id.

Nevertheless, defendant's proof that he had either adequate reason to leave or cause for divorce was, as noted, so weak as to be nonexistent. He left the marital domicile for another woman.

In addition to all else, defendant apparently contends that relatrix's conduct since the inception of the order of support in 1970 has been such that the order ought to be vacated. Presumably he means retrospectively, and refers to that portion of the past orders which might be allocated to her support. The conduct, which he alleges supports such a result, relates to the efforts of relatrix to compel him to pay the order (leading to defendant's incarceration on occasion), and perhaps to controversies between the parties relating to custody of the children. As must be evident, this was and is an exceptionally bitter battle between the parties and the litigation has been enormously complicated by the fact that

defendant has chosen to represent himself through much of it. Suffice it to say on this issue that we find no basis factually or legally in support of defendant's position.

## THE PETITION TO REDUCE

The thrust of this aspect of the petition, of course, is that there has been a change of circumstances since Judge Henry's hearing on April 3, 1973. In considering the petition, all relevant facts must be taken into consideration: Bell v. Bell, 228 Pa. Superior Ct. 280, 323 A. 2d 267 (1974). Defendant "has the burden of proving by competent evidence sufficient facts which show a material and substantial change in circumstances.": Shuster v. Shuster, 226 Pa. Superior Ct. 542, 545, 323 A. 2d 760 (1974). Therefore, we must determine what the circumstances of the parties were on April 3, 1973, and in what respect they have changed since that date.

We have carefully analyzed the notes of testimony taken before Judge Henry and rely, as we should and must, upon the findings of fact set forth in his opinion of September 4, 1973.

As is usual in support proceedings, evidence concerning income and expense in both hearings was variously and indiscriminately described by the week, month or even year. Since the ultimate order will direct a weekly payment, an effort will be made to translate all pertinent figures to weekly amounts.

The primary changes of circumstances involve defendant's expenses, which have substantially increased, and relatrix's income, which has also markedly increased. All other factors have remained substantially the same.

Defendant's expenses in April, 1973, were approximately $186 per week ($800 per month). (Henry, *J.*, opinion, supra, finding 14.) Currently, these expenses are said to be approximately $272 per week ($1,170 per month), an increase of $86 per week. Of this increase, $66.28 is attributable to a change of residence and to placing Eric in a private instead of a public school. His income has changed very little. In 1973, he was earning almost $230.81 per week net from employment ($992.50 per month). (Henry, *J.*, opinion, supra, finding 5.) In addition, he had some interest income. His present earnings are almost $226 per week net and no interest income.

Relatrix, on the other hand, is now employed, earning $11,308 per annum. Her net income from employment is approximately $150 per week, exclusive of her contribution to the State Employes Retirement Fund. In addition, she rents a portion of the parties' jointly owned home to a woman for $80 per month, yielding weekly income of $18.46. This contrasts with earnings at an estimated rate of $23 per week ($1,200 per annum) in April 1973. As to her needs, she testified there has been little change except for inflation. Judge Henry found these to be $335 per week in April, 1973. (Henry, *J.*, opinion, supra, finding 12.) Assuming a modest 10% inflation factor, her needs must now approximate $369 per week.

Thus, the present combined net income of the parties is approximately $394 per week, while the total needs would appear to be $641 per week. Relatrix's deficit would appear to be $191 per week, and defendant's deficit $46 per week. Obviously, neither party can continue living in that fashion if, indeed, they have done so in the past.

With that overview of the economic situation, we turn to a discussion of what modification should be made in the order. The present order does not segregate an amount for support of the child, Jennifer, from that attributable to the support of relatrix. In order to resolve the issues, it will be necessary to do so now. We will deal first with support for Jennifer. Clearly, under the equal rights amendment, supra, the parties must share, in accordance with their ability to do so, the support of both children: Conway v. Dana, 456 Pa. 536, 318 A. 2d 324 (1974). Each has permanent custody of one child. Defendant carefully delineated his estimates of the expenses he felt should be allocated to the maintenance of Eric, the child with him. A similar breakdown of relatrix's expenses attributable to Jennifer, the child with her, was not made at the hearings. After a careful review of the matter, however, the court concludes that the separate costs of maintaining the two children in separate households either is in fact equal or, for present purposes, should be so considered. We consider, then, that each party is fulfilling one-half the total obligation of support of the two chidren. The question remains, however, whether that equality ought to be disturbed under the circumstances of the case. One factor immediately comes to mind, and that is, it is clear that defendant has a greater income than relatrix. In fact, he earns 57 percent of the combined income of the parties. Since we have postulated that each party is now bearing one-half of the total child support, a 7 percent adjustment in favor of relatrix appears logical. Of course, this factor should be applied to need. As noted heretofore, we have no clear figure as to Jennifer's separate needs. However, we do as to Eric—the figure comes to $148 per

week. If we equate the needs of the children, then that is the approximate need for Jennifer as well. Seven percent of that figure equals $10 per week. The sum is equitable under all the circumstances.

As to relatrix's entitlement, after adjusting defendant's net income downward to reflect the added $10 burden of Jennifer's support, his weekly net income exceeds that of relatrix by about $47. In addition, relatrix's needs appear to be significantly more than defendant's. Accordingly, we consider an order of $25 per week in favor of relatrix to be fair.

### THE ARREARAGES

The existing order of $120 per week, as we have noted, was effective April 3, 1973. Relatrix started significant gainful employment, and thus altered the equation of support, on October 1, 1973. As of January 1, 1974, her income was augmented by $18.46 per week through renting a room in the jointly-owned home which she and Jennifer occupy. Clearly, defendant is entitled to an adjustment of the debits against his account to reflect these changes. We conclude that he is entitled to a remission of arrearages accumulated between October 1, 1973, and January 1, 1974, to the extent that such arrearages were computed on an order in excess of $50 per week, and to a remission of arrearages accumulated since January 1, 1974, to date to the extent that such arrearages were computed on an order in excess of $35 per week.

Relatrix has argued that since she entered judgment on certain arrearages as of March 30, 1974, arrearages reflected in that judgment may not be remitted. We do not conceive this to be the law. To the contrary, we believe defendant may petition the

court to open that judgment so that it may be reduced to reflect only such arrearages as are properly taxed to him in accordance with this opinion and order.

## THE CLAIM FOR SUPPORT FOR ERIC

It is apparent that, in view of the foregoing rationale, the court has concluded that, in the present circumstances of the parties and the children, the respective obligations of the parents for the support of both children have been fully balanced, with an adjustment in favor of Jennifer to the extent of $10 per week. Accordingly, Mr. Feingold's petition for support for Eric must be dismissed.

## ORDER

And now, March 5, 1975, in the matter of Commonwealth ex rel. Mary Feingold v. Leonard Feingold, at 535 September term, 1970, the order of the court dated June 26, 1973, is modified, and defendant is ordered to pay to Elmer Lentz, Chief Desertion Officer of Montgomery County, the sum of $25 per week for the support of his wife, Mary, and $10 per week for the support of his child, Jennifer. Bond to remain as heretofore.

It is further ordered in said matter that the chief desertion officer shall compute the extent to which arrearages accumulated between October 1, 1973, and January 1, 1974, were based upon an order in excess of $50 per week and the extent to which arrearages accumulated thereafter were based upon an order in excess of $35 per week and shall credit defendant's account with said sums, said arrearages being hereby remitted.

The remaining prayers for relief asserted by defendant in said matter are dismissed.

It is further ordered, in the matter of Commonwealth ex rel. Leonard Feingold v. Mary Feingold, at 90 January Term, 1974, that the petition be and is hereby dismissed, without prejudice to the right of the relator to recommence such an action upon a change of circumstances.