Sheron ADAMS, Individually and as Administratrix of the Estate of Rosetta Miller and as Next Friend of Jerome Adams, Raymond Adams, Mark Adams, Endora Adams, and Joseph Adams, Appellant,

v.

A.B. & A., INC., t/a A.B. & A. Heating & Air Conditioning Company, and Sidney Grossman, Appellees.

No. 89–CV–272.

District of Columbia Court of Appeals.

Argued Nov. 18, 1991.
Decided May 1, 1992.
Rehearing and Rehearing En Banc
Denied Oct. 15, 1992.

Landon Gerald Dowdey, Washington, D.C., for appellant.

John D. Holler, Mount Rainier, Md., with whom Kenneth R. West, Bethesda, Md., was on the brief, for appellees.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

FERREN, Associate Judge:

In this home improvement contract case, plaintiff-appellant (the homeowner) seeks review of: (1) a partial directed verdict in favor of defendant-appellees (the contractor and its owner), (2) the denial of appellant's motion for an award of treble dam-

ages and attorney's fees, and (3) an order granting appellees' motion for judgment n.o.v., by which the trial court overturned a jury verdict awarding appellant damages totalling $17,900. Emphasizing this last alleged error, appellant argues that the trial court erroneously rejected her claims under the Consumer Protection Procedures Act, D.C.Code § 28–3904(n) and (x) (1991). The trial court concluded, after verdict, that these claims had not been sufficiently identified in the pleadings. Appellant counters that they had been set forth in her pretrial statement and incorporated by reference in the pretrial order, that they were actually litigated, and thus that they were properly sent to the jury. Rejecting appellant's contentions, we affirm.

## I.

Appellees failed to complete installation of a heating and air conditioning system in appellant's house, as they had contracted to do. Appellant sued on four counts [1]: (1) breach of contract; (2) failure to obtain a home improvement license; (3) negligence and gross negligence; and (4) fraud. The trial court directed a verdict on the breach of contract claim on the ground that appellant had failed to present evidence on the proper measure of damages. The trial court also directed a verdict for appellees on the claim of failure to obtain a home improvement license, because licensed air conditioning mechanics are specifically exempted from the regulation requiring home improvement licenses, see 16 DCMR 899.1 (1987), and appellant presented no evidence to demonstrate that appellees were not covered by the exemption. The trial court likewise directed a verdict on the fraud count because no evidence of fraud had been presented. Appellant herself dismissed the negligence count.

During extensive discussions in chambers after the judge had directed the verdicts against appellant, appellees argued that the case was at an end while appellant argued that she had claims remaining—although they had not been specifically pleaded—under the Consumer Protection Procedures Act, D.C.Code §§ 283901, et seq. (1991). Appellant asserted that her remaining claims had been implied or "incorporated" in the paragraphs of her claims for breach of contract and failure to obtain a license. Specifically, appellant argued that she had implicitly pleaded violations of D.C.Code § 28–3904(n) and (x).[2] The trial court decided that the interests of justice would best be served by allowing these allegedly "implied" claims to go to the jury.[3] See Corley v. BP Oil Corp., 402 A.2d 1258, 1263 (D.C.1979).

The jury returned a verdict in favor of appellant, awarding damages totalling $17,-

---

1. We are aware that appellant has disclaimed on appeal the division of her complaint into four counts. Nevertheless, we must address the record before us. The case apparently was tried on the first amended complaint, which retained the counts.

2. D.C.Code § 28–3904(n) and (x) (1991) provide in relevant part:

   It shall be a violation of this chapter ... for any person to:

   \*　　\*　　\*　　\*　　\*　　\*

   (n) cease work on, or return after ceasing work on, an electrical or mechanical apparatus, appliance, chattel or other goods or merchandise, in other than the condition contracted for, or to impose a separate charge to reassemble or restore such an object to such a condition without notification of such charge prior to beginning work on or receiving such object;

   \*　　\*　　\*　　\*　　\*　　\*

   (x) sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2–312 through [2–]318 of the District of Columbia Code, or by operation or requirement of federal law....

3. "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Super.Ct.Civ.R. 50(b). The trial court is deemed to have reserved decision on the directed verdict even when it has denied the motion. See 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2537 at 600 (1971).

900. Appellant moved for an award of treble damages and attorneys' fees. Appellees moved for a judgment n.o.v., which the trial court granted.

## II. *Directed Verdict.*

■ Appellant claims the trial court erred in directing the verdict in appellees' favor on the breach of contract claim. Viewing the facts in the light most favorable to the non-moving party, *e.g., Washington v. A & H Garcias Trash Hauling*, 584 A.2d 544, 545 (D.C.1990), the trial court concluded that appellant had presented "no evidence whatsoever" on the reasonable cost of completing the contract—the appropriate measure of damages here. We agree.

Appellant contends that this case is controlled by *Robinson v. Sarisky*, 535 A.2d 901 (D.C.1988), in which we affirmed an award of compensatory and punitive damages in the case of a wrongful eviction. She argues that appellees' abandonment of the job of installing a heating system in mid-winter rendered her home uninhabitable and amounted to constructive eviction and an intentional infliction of emotional distress. We conclude, however, as did the trial court, that such a claim was not pleaded and was not supported by the evidence. We perceive no error in the trial court's decision to grant appellees' directed verdict motion on the breach of contract claim.

## III. *Judgment n.o.v.*

■ The trial court granted appellees' motion for judgment n.o.v. on the ground that "[n]ot even by the most strained reading in [appellant's] favor can it be said that her Amended Complaint implicates or refers to violations of the Consumer Act." Appellant argues that her pretrial statement superceded the pleadings. *See Howard v. Kerr Glass Mfg. Co.*, 699 F.2d 330, 333 (6th Cir.1983) (issues presented at pretrial conference and incorporated in pretrial order supercede the pleadings). Although appellant argues that her statutory claims based on the Consumer Protection Procedures Act are contained within her pretrial statement and, thus, are within the pretrial order, we have examined both documents,

as well as the pleadings, and we share the trial court's surprise. Appellant's second pretrial statement referred to the Consumer Protection Procedures Act only twice: first, in her request for treble damages pursuant to D.C.Code § 28–3905(k)(1) and, second, in Paragraph 10, requesting that the court judicially notice numerous statutes and regulations, among which was "D.C.Code §§ 28–3900, *et seq.*" [sic]. Appellant never made specific reference in the pleadings or in the pretrial statement to § 28–3904(n) and (x), the statutory provisions on which the jury's verdict was allegedly based. This scattershot approach at pretrial, where only one provision of a statute is specified and the rest of the statute in general is mentioned, without any focus on what the pleader expects the opponent to defend under the balance of the statute, will simply not do. A defendant is entitled to more notice than that.

■ " 'The purpose of the pretrial conference is to define the claims and defenses of the parties in order to *narrow the issues,* eliminate unnecessary proof and lessen the opportunity for surprise thereby expediting the trial.' " *Daniels v. Beeks*, 532 A.2d 125, 128 (D.C.1987) (emphasis added) (quoting *Redding v. Capitol Cab Co.*, 284 A.2d 54, 55 (D.C.1971)). *See also Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1529 (11th Cir.1989) ("The purpose of the pretrial order is to narrowly outline the existing issues.") In *Taylor v. Washington Hosp. Center*, 407 A.2d 585 (D.C.1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980), we affirmed the trial court's denial of plaintiff's motion to modify the pretrial order so as to raise a new theory of negligence against a new defendant. We emphasized that pretrial procedures are designed to remove cases from the realm of surprise. *See id.* at 592. The trial court may reject an attempt to pursue an issue not listed in the pretrial order. *See* 6A C. WRIGHT, A. MILLER & M.K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1527 at 271 (1990); *see also District of Columbia v. Sterling*, 578 A.2d 1163, 1167 (D.C.1990) (trial court had discretion to refuse to permit District to pres-

ent a defense not adequately identified in pretrial statement). Furthermore, the trial court may refuse to give an instruction on an issue not embodied in the pretrial order. *See* 6A WRIGHT, MILLER & KANE § 1527 at 279. We conclude that because the trial court has the discretion to refuse an instruction or to prohibit testimony on an issue not defined in the pretrial order, the court may cure the situation, after having allowed such an issue to go to the jury, by entering a judgment n.o.v.[4]

■ Issues not raised by the pleadings may still be adjudicated if those issues are actually tried by the parties by express or implied consent. *See* Sup.Ct.Civ.R. 15(b). We have determined the standard for assessing whether issues have been actually litigated:

> Whether parties have impliedly contested a matter—i.e., whether parties recognize that an issue not stated by the pleadings entered the case—is determined by searching the trial record for indications that the party contesting the amendment

received actual notice of the injection of the unpleaded matters, as well as an adequate opportunity to litigate such matters and to cure any surprise from their introduction.

*Moore v. Moore*, 391 A.2d 762, 768 (D.C. 1978) (citations omitted). Here, the trial court acknowledged both its own and appellees' surprise at appellant's assertion that she had pled and litigated claims pursuant to D.C.Code § 28-3904(n) and (x). An examination of the record reveals that the claims were not actually litigated by the parties.[5] No testimony, either lay or expert, was directed at violations of those provisions of the Consumer Protection Procedures Act on which the case allegedly went to the jury: § 28-3904(n) and (x). The jury was not instructed on the law in reference to D.C.Code § 28-3904(n) or (x), and neither party objected to the instructions as given.[6] Nor did the verdict form require the jury to determine affirmatively that the defendant had ceased work in violation of the contract (*see* § 28-3904(n)) or

---

4. Chief Judge ROGERS in dissent says that the judge "apparently had forgotten the efforts of Ms. Adams' counsel to explain the nature of her statutory claims"; our colleague takes the position that the judge interrupted appellant's trial counsel, frustrating counsel's efforts to argue that A.B. & A. had violated the Consumer Protection Procedures Act by abandoning the job. In fact, however, the record does not reflect that concern. Trial counsel did return to his abandonment argument after the trial judge had asked that discussion of abandonment be deferred, but counsel never claimed that the alleged abandonment violated the Act. Rather, counsel argued at different times that the abandonment was a constructive eviction, an intentional infliction of emotional distress, and harassment. Defense counsel correctly pointed out that plaintiff-appellant had not sued under any of these theories. Plaintiff's co-counsel then argued still another theory: that the defendant-appellee had planned to abandon the job and therefore had committed fraud.

The court gave appellant's trial counsel an opportunity to address the court at the conclusion of the argument on the defendant's directed verdict motions. Counsel stated:

"Judge, the only thing I would like to add is I suppose we should put on the record the ruling you made in chambers . . . that we would not be able to present . . . a survival claim on behalf of Rosetta Miller."

Again, trial counsel did not refer to the Consumer Protection Procedures Act.

In oral argument before this court, appellant's counsel strenuously argued that this was a products liability case, presenting yet another theory upon which appellant might have sued but did not.

5. Although there is some authority for the argument that a statute need not be specifically pleaded where the complaint sets forth sufficient facts to bring the case within the statute, *see, e.g., Neverett v. Towne*, 121 Vt. 447, 159 A.2d 345, 348 (1960); *Sheffit v. Koff*, 175 Pa.Super. 37, 100 A.2d 393, 395 (1953), this does not extinguish the requirement that the parties must litigate the issues for the court to resolve them. *Cf. Moore*, 391 A.2d at 769 (discussing how parties implicitly consented to try issues through evidence presented at trial).

6. Although the dissent argues that appellant's trial counsel "tried to get a more specific instruction on § 28-3904(n)," post at 869, we do not understand the record to reflect any objection to the instructions. Counsel's comment that "the statute that we're operating under talks about ceasing work" came in the middle of an argument that the court should direct a verdict for the plaintiff on the issue of whether appellant Adams had prevented the defendants from completing the work. There was no specific objection to the failure of the court to instruct on the Consumer Protection Procedures Act.

sold consumer goods in violation of §§ 28:2–312 through 2–318 or of any federal law (*see* § 28–3904(x)). Rather, the verdict form reflected only the jury's determination that Mrs. Adams did not force appellee to abandon the job—a finding which, contrary to appellant's contention, did not in itself necessarily reflect a violation of § 28–3904(n).[7]

Because appellees did not receive, either before or during trial, timely notice that the specific Consumer Protection Procedures Act claims now cited as bases of the verdict were being litigated, they would in effect have been deprived of their "day in court" as to these claims if the trial court had allowed the jury verdict to stand. *Moore*, 391 A.2d at 768. Accordingly, we conclude that the entry of judgment n.o.v. was not improper.[8]

*Affirmed.*

ROGERS, Chief Judge:

The majority holds that notwithstanding the references in the complaint and pretrial statement to the Consumer Protection Procedures Act, and the request for treble damages for violation of a trade practice under the Act, the trial court did not abuse its discretion in granting judgment notwithstanding the verdict on the statutory claim. The majority reaches this conclusion even though the defendant conceded that its defense at trial would have remained the same had the plaintiff specified subsections of the statute, D.C.Code §§ 28–3904(n) and (x), on which she was relying. The majority also ignores plaintiff's counsel's frustrated attempts to explain the statutory claim to the trial court as well as the evidence at trial. Indeed, the majority's analysis fails to accept the parties' determination that there was only one disputed factual issue, namely, whether Ms. Adams had

prevented A.B. & A. from completing the job. Because the central issue is whether Ms. Adams adequately asserted a Consumer Protection Procedures Act claim under D.C.Code § 28–3904(n) and (x) in her complaint and pretrial statement, the majority, in my view, has elevated form over substance in a case in which the parties agreed on the nature of their dispute and the plaintiff's theory remained unchanged throughout the case.

I.

This case involves a simple dispute. The plaintiff, Ms. Adams, needed a new heating and air-conditioning system in her home and hired the defendant, A.B. & A., Inc., to do the job. Although she paid $6,000 toward the $8,500 contract price, A.B. & A. never completed the project. Thus, her home was without heat and left with large holes in the floors, ceilings and walls during the middle of winter. When Ms. Adams filed suit, A.B. & A. defended on the ground that Ms. Adams was responsible for causing A.B. & A. to abandon the project.

A brief review of the pleadings and proceedings reveals that a statutory claim under the Consumer Protection Procedures Act was presented. In her complaint, Ms. Adams alleged, *inter alia*, that A.B. & A. "began work on the contract on January 17, 1985 and abandoned it, uncompleted, on January 24, 1985."[1] The complaint was in four counts: (1) breach of contract, (2) violation of D.C.Code, Title 28, Section 3901 (i.e., the Consumer Protection Procedures Act), 16 DCMR § 800 (a licensing requirement), (3) negligence/gross negligence, and (4) fraud. In Count II she sought treble damages. Her pretrial statement of May 16, 1988, which the trial judge incorporated

---

7. The jury could have determined, for example, that although Mrs. Adams did not force A.B. & A. to abandon the job, it was prevented from completing the work because there was no electrical system to support the new heating and air conditioning system.

8. Because we conclude that the trial court did not err when it entered a judgment n.o.v., we need not address appellant's additional argu-

ments that she was erroneously denied leave to amend her complaint to add claims on behalf of other occupants of her home and that she was entitled to an award of treble damages and attorneys' fees.

1. Two other sections of the complaint also contain assertions that appellant "abandoned the work" or "beg[a]n and never completed [the work]."

into the pretrial order, listed among the theories of liability a claim that A.B. & A. "abandon[ed] their [sic] work when plaintiffs complained about their [sic] failure to perform as agreed." She stated that she was suing for violation of § 28–3901 *et seq.* The section on damages in the pretrial order contained a claim for treble damages under D.C.Code § 28–3905(k)(1) of the Consumer Protection Procedures Act, and the statutes and municipal regulations relied upon included D.C.Code § 28–3901, *et seq.*

The proceedings likewise show that the statutory claim was before the trial court. At the close of the plaintiff's case in chief, the defendant moved for a directed verdict. During argument on the motion, the trial judge decided to address the claims in the order presented by A.B. & A. When the trial judge asked Ms. Adams' counsel about her proof of damages with respect to the contract claim, the following colloquy took place:

> [Plaintiff's counsel]: First of all, Your Honor, I would like to point out that the abandonment issue has been subsumed, I believe, although it can be described in contract terms, initially, it has been subsumed by the consumer protection procedures—

> The Court: Well, we're going to get to that claim later, I think, in the course of [defense counsel's] motion. I would like for you to address [the contract] question right now. . . .

In addressing the second count, labeled "Violation of D.C.Code, Title 28, Section 3900, DCMR 1600, Section 800," defense counsel stated:

> [Defense Counsel]: Understanding that the Count II involves Consumer [Procedures] Protection Act, and not, simply

the particular regulation that he has addressed, I would like to address that regulation [16 DCMR § 800], and I'll address [the Consumer Procedures Protection Act] later. . . .

When defense counsel proceeded to the third count without mentioning the CPPA claim, plaintiff's counsel interrupted and the following colloquy took place:

> [Ms. Adams' Counsel]: Might I interrupt just a moment? We skipped ... the *Consumer Protection Procedures Act.*

> The Court: Well, let him do his motions, then we'll get to what's missing.

However, the judge took A.B. & A.'s motion for a directed verdict under advisement without ever returning to the issue of Ms. Adams' Consumer Protection Procedures Act claim. Although A.B. & A.'s counsel indicated a preference for an immediate ruling on the directed verdict motion, claiming the outcome would affect its presentation of a defense, the trial judge decided to defer ruling until after the defense had presented its case. A.B. & A. ultimately decided to rest without putting on any evidence.

The judge thereafter granted A.B. & A.'s motion for a directed verdict with respect to the claims for breach of contract, engaging in home improvement activities without a license, and fraud.[2] The question arose what issues were left in the case. A.B. & A.'s counsel took the position that no issues were left in the case, while counsel for Ms. Adams stated that "[t]he only matter involved here is whether or not there were code violations, which I believe is included within my theory of failure to complete the contract."[3]

---

2. Ms. Adams conceded that gross negligence was not an issue, and the trial judge ruled that intentional infliction of emotional distress was neither plead nor supported by any evidence submitted during trial.

3. In summarizing the position of the parties during their discussion in chambers, the trial judge stated that he understood the plaintiff to argue "that contained in the language of Counts 1 and 2 of the complaint, the breach of contract and the violation of the home improvement [licensure] law, that the burden alleged in those

two counts was language bringing this lawsuit within the District of Columbia Consumer Protection Procedure Act in that plaintiff was asserting that there still remains a valid and actual cause of action in the case." The judge noted that plaintiff's counsel claimed that "the pretrial statement gave full notice to the defendants that this issue was in the case and that the whole case was litigated with that in mind." The judge stated that he was prepared to let the issue go to the jury.

Thereafter, the trial judge sent the case to the jury on special interrogatories to decide whether A.B. & A. violated § 28–3904(n) and (x) of the Consumer Protection Procedures Act.[4] Both parties made various objections to the special verdict form submitted to the jury.[5] Ms. Adams' counsel renewed his request for treble damages. Significantly, in an apparent attempt to bring the "ceasing work" language of the Consumer Protection Procedures Act into the verdict form, Ms. Adams' counsel, who was again interrupted by the judge, stated in objecting to the verdict form:

> [Plaintiff's counsel] And in that connection, I would like to point out that the statute that we're operating under talks about ceasing work. And so—
> The Court: Well, now, Mr. Dowdey, I'm troubled because it seems to me we went through hours of discussion on Friday.
> [Appellant's Counsel]: I don't intend to do that.
> The Court: And it seems to me that this is language that you agreed to, that you thought was appropriate and that given

the circumstances of the many disagreements we have had in this case that that would in fact be adequate to deal with the problem.[6]

The jury found that Ms. Adams had not prevented the defendants from completing the work prior to November 1985, and that she was entitled to recover $17,900. The trial judge nevertheless granted A.B. & A.'s motion for judgment notwithstanding the verdict on the grounds that neither Ms. Adams' amended complaint nor her pretrial statement adequately set forth a Consumer Protection Procedures Act claim under D.C.Code 28–3904(n) or (x). Furthermore, noting that pleadings may be amended to conform to the evidence presented at trial under Super.Ct.Civ.R. 15(b), the trial judge found that Ms. Adams never sought such an amendment and, that even if she had, no evidence on the Consumer Protection Procedures Act claims were introduced at trial. The judge thereafter stated in his order that "it was not until counsel met in chambers after the evidence was in that plaintiff's counsel—much to the surprise of both

---

4. The special interrogatories to the jury were:
   1. Were the defendants prevented by Mrs. Adams from completing the work on the contract prior to November 1985?
   ANSWER: No.
   If the ANSWER is "Yes", then you have found in favor of the defendants and have nothing further to decide.
   2. If the ANSWER is "No", then you are to consider damages that defendants should pay plaintiff for failing to complete the contract, limited to the following categories:
   (a) Cost of repairing plaintiff's property arising from the work that actually was done: $1,400.00
   (b) Cost of items that plaintiff had to purchase because the heating system was inoperable—that is, space heaters and blankets: $500.00
   (c) Reasonable additional costs of installing a heating system that would adequately heat the house: $3,500.00
   (d) Personal damages incurred by Mrs. Adams (through November, 1985 only) proximately caused by the failure of the defendants to complete installation of the heating system: $12,500.00

5. The plaintiff noted that January 1985 should be specified instead of November 1985, when the offer by A.B. & A. that was rejected by

plaintiff precluded further activity, and the judge agreed that sounded logical. The judge agreed to change the verdict form to specify "prior to November 1985." Ms. Adams also objected to asking the jury whether it believed defendant was prevented by her from completing the contract on the ground that there was no evidence to support such a finding by the jury.

6. Thus, a possible attempt by Ms. Adams' counsel to have the instructions (through the verdict form) to the jury mirror the language of her statutory claim under § 28–3904(n) came to naught. Through requests relating to damages, it seems clear that she understood that the instructions included her claim under § 28–3904(x); indeed, it is clear, from the objection by counsel for A.B. & A. to the instruction, that the trial judge was proposing to instruct on the warranty claim. Furthermore, although A.B. & A.'s counsel objected to the jury instructions, the general nature of its objection was that the instructions were altogether unnecessary because the statutory claims had not been appropriately pled, and not that the instructions would be inadequate to resolve statutory claims under § 28–3904(n) and (x), assuming such claims had been appropriately pled. The majority's reference to the failure of plaintiff's counsel to object to instructions on the Consumer Protection Procedures Act, see majority opinion at 8 n. 6, is puzzling since the trial judge did instruct on the statutory claims.

defendants and the Court—asserted that they had plead and litigated claims pursuant to D.C.Code § 28–3904(n) and (x)."

## II.

A complaint must contain a "short and plain statement of the claim," and if it does not, a dismissal is warranted. Super.Ct.Civ.Rule 8(a); *Peebles v. Rudolph*, 121 A.2d 264, 265 (D.C.Mun.App.1956). However, Super.Ct.Civ.Rule 8(e), modeled on Rule 8 of the Federal Rules of Civil Procedure, also states that "[n]o technical forms of pleading ... are required."

There is no single rule on whether a complaint or pretrial statement must include references to statutory subsections in order to preserve a statutory claim. A number of jurisdictions have expressed a common view that "statutes need not be specifically pleaded." *Sheffit v. Koff*, 175 Pa.Super. 37, 100 A.2d 393, 395 (1953); *Neverett v. Towne*, 121 Vt. 447, 159 A.2d 345, 348 (1960); *Fasekis v. J.J. Newbury Co.*, 93 N.H. 468, 44 A.2d 817, 819 (1945).[7] Instead, the complaint need only "set forth sufficient facts to bring the case within the statute in question." *Sheffit v. Koff, supra*, 100 A.2d at 395 (citing *Goldberg v. Friedrich*, 279 Pa. 572, 124 A. 186 (1924)). Accordingly, to determine whether § 28–3904(n) and (x) were adequately plead requires analysis of both the statute and the

pleadings to determine whether the pleading "sets forth sufficient facts to bring the case within the statute." *Id.*

Upon comparing the allegations in the complaint with the language of the statute, it is clear that Ms. Adams set forth sufficient facts to bring her case within § 28–3904(n) of the Consumer Protection Procedure Act.[8] In her complaint, she alleged that she hired A.B. & A. to install an electrical heating and air-conditioning system (an electrical apparatus), that A.B. & A. "began work on the contract.... and [latter] abandoned it," and that A.B. & A.'s abandonment left the house with "holes in the walls, ceilings and floors," and without heating and air-conditioning (not left in the condition contracted for). In other words, A.B. & A. ceased work on an electrical apparatus.

Likewise, Ms. Adams' complaint alleges sufficient facts to bring her case within § 28–2904(x). The complaint states that A.B. & A. contracted for the installation of a heating and air-conditioning system. Undoubtedly, the system is a consumer product. Her complaint further pleaded the facts necessary to allege a breach of warranty under § 28:2–313.[9] Because Ms. Adams specified in her complaint that A.B. & A. contracted to provide an electric heating and air-conditioning system,[10] and that

---

7. Because the issue, as in *Sheffit v. Koff, supra*, 100 A.2d at 395; *Neverett v. Towne, supra*, 159 A.2d at 348; and *Fasekis v. J.J. Newbury Co., supra*, 44 A.2d at 819, is whether or not Ms. Adams' claim was sufficiently raised in the pleadings, if it was, then there would be no need to demonstrate that the pleadings should have been amended pursuant to Super.Ct.Civ.R. 15(b) and *Moore v. Moore*, 391 A.2d 762 (D.C.1978), because the pleadings would have already contained the issue.

8. D.C.Code § 28–3904 provides, in pertinent part:

It shall be a violation of this chapter, whether or not any consumer is in fact mislead, deceived or damaged thereby, for any person to:

\* \* \* \* \* \*

(n) cease work on, or return after ceasing work on, an electrical or mechanical apparatus, appliance, chattel or other goods or mer-

chandise, in other than the condition contracted for ... [or]

\* \* \* \* \* \*

(x) sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2–312 through 318 of the District of Columbia Code, or by operation of federal law....

9. D.C.Code § 28:2–313 provides:
(1)(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

10. Apparently, this contract can be characterized for the provision of both services and consumer goods. A.B. & A. argued at trial and on appeal that the statute does not cover the parties' contract on the ground that it was primarily for the provision of services and not consumer goods. Still, A.B. & A. does not contend on appeal that such a defense would have been asserted had Ms. Adams' complaint referred to a § 28–3904(x) claim.

no such system was provided, she alleged that A.B. & A. failed to provide a system that conformed to the contractual description of a heating and air-conditioning system.

The whole purpose of a pleading is to provide adequate notice to the defendant and the trial court of the claims being asserted.[11] Since Ms. Adams only needs to allege sufficient facts to bring her case within the statute, and not the specific statutory section being relied upon, *Sheffit v. Koff, supra,* 100 A.2d at 395; *Neverett v. Towne, supra,* 159 A.2d at 348; *Fasekis v. J.J. Newbury Co., supra,* 44 A.2d at 819, she adequately pled facts that would entitle her upon adequate proof to recovery based on violations of both § 28–3904(n) and (x). In view of the simple nature of the dispute between the parties, and the defendant's concession that even with specifically pleaded statutory provisions its defense would have been the same, any other conclusion would elevate form over substance. While the complaint and pretrial statement could have been more artfully drafted, an understanding of the judge's ruling may best be understood in light of the judge's statement in his order granting A.B. & A.'s

motion for judgment that at the time he ruled he was relying on his own notes and did not have the trial transcript.

Accordingly, because the judge's decision appears to rest in part on a mistaken view that Ms. Adams was required to include specific statutory subsections in her pleading, and apparently had forgotten the efforts of Ms. Adams' counsel to explain the nature of her statutory claims, I would hold that the trial judge abused his discretion in granting A.B. & A.'s motion for judgment notwithstanding the verdict on the grounds that appellant never plead or litigate § 28–3904(n) and (x) of the Consumer Protection Procedures Act.[12]

### III.

Nor can the trial judge's ruling be affirmed on the ground that Ms. Adams was "attempt[ing] to pursue an issue not listed in the pretrial order." See majority opinion at 860, citing 6A C. WRIGHT, A. MILLER & M.K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1527 at 271 (1990), and *District of Columbia v. Sterling,* 578 A.2d 1163 (D.C. 1990). The pretrial order, by incorporating Ms. Adams' pretrial statement, includes a sufficient reference to appellant's claims

---

**11.** Indeed, Super.Ct.Civ.R. 15(b) goes even further, allowing, in order "to avoid the tyranny of formalism," parties to amend their pleadings after trial, and even after judgment, to add claims "as long as the proposed augmentation of the pleadings encompasses matters expressly or impliedly tried by consent of the parties." *Moore v. Moore, supra* note 7, 391 A.2d at 768 (quoting *Rosden v. Leuthold,* 107 U.S.App.D.C. 89, 92, 274 F.2d 747, 750 (1960)). A party is deemed to have impliedly contested a matter when the trial record shows "that the party contesting the amendment received actual notice of the injection of the unpleaded matters, as well as an adequate opportunity to litigate such matters and to cure any surprise from their introduction." *Id.* Implied consent to try an issue, in turn, "lie[s] in the failure to object to evidence, or in the introduction of evidence which is clearly apposite to the new issue but not to other matters specified in the pleadings." *Id.* citing WRIGHT & MILLER, FED.PRAC. & PROC., CIVIL § 1493.

**12.** The majority's suggestion that plaintiff's counsel was not interrupted or frustrated in his efforts to assert the statutory claims, *see* majority opinion at 861 n. 4, simply ignores the record

and cites to discussion on other matters. The discussion by plaintiff's counsel of the constructive eviction, intentional infliction of emotional distress, and harassment was in the context of addressing the negligence/gross negligence claims in Count III of the complaint. Clearly, counsel was not referring to the same claim that he characterized as being "subsumed by the consumer protection procedures ..." under Count II.

Furthermore, the quoted comment of plaintiff's counsel, *see* majority opinion at 861 n. 4, *supra,* came during the conference in chambers at which it was decided that the statutory claims would be submitted to the jury; hence, there was no need for plaintiff's counsel to refer again to the statutory claim. In fact, the trial judge only asked A.B. & A.'s counsel if he had any additional claims to address. Plaintiff's counsel thereafter interrupted regarding a survival claim of Rosetta Miller. Although plaintiff's counsel characterized the survival claim as the "only thing [he] would like to add," this cannot fairly be read as a waiver by plaintiff's counsel of any objection to the trial judge's failure to return to the abandonment claim as promised. Nor did Ms. Adams' counsel waive or abandon his statutory claim during oral argument on appeal.

under the Consumer Protection Procedures Act.

"The purpose of the pretrial conference is to define the claims and defenses of the parties in order to narrow the issues, eliminate unnecessary proof and lessen the opportunity for surprise thereby expediting the trial." *Redding v. Capitol Cab Co.,* 284 A.2d 54, 55 (D.C.1971). Since the pretrial order " 'limits the issues for trial' and 'such order when entered controls the subsequent course of action,' " *id.* (quoting Super.Ct.Civ.Rule 16), "[t]he parties may not later inject an issue not raised at the pretrial conference." *Id.* (footnote and citation omitted); *see also Daniels v. Beeks,* 532 A.2d 125, 128 (D.C.1987); *Taylor v. Washington Hospital Center,* 407 A.2d 585 (D.C.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980); 6A C. WRIGHT, A. MILLER & M.K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1527 at 271 (1990). Furthermore, it is within the trial court's discretion to exclude evidence beyond the scope of the pretrial order. *Banks v. B.F. Saul Co.,* 212 A.2d 537 (D.C. 1965). Notwithstanding this rule, the trial court may modify the pretrial order "to prevent manifest injustice." *Redding v. Capital Cab Co., supra,* 284 A.2d at 55 (quoting Rule 16); *see Taylor v. Washington Hospital Center, supra,* 407 A.2d at 592 ("Designed to promote litigation on the merits, pretrial must not, of course, be used to thwart its very objective") (quoting 3 MOORE'S FEDERAL PRACTICE AND PROCEDURE § 16.20 at 1138 (1978 ed.)).

Contrary to the majority's analysis, the issue is not whether the law permits Ms. Adams to pursue an issue outside the pretrial order. *See* majority opinion at 5–6. Rather, the question is whether her pretrial order contained a sufficient reference to the statutory claim to bring it within the case. *See Conlon v. Tennant,* 110 U.S.App.D.C. 140, 142, 289 F.2d 881, 883 (1961) (quoting *Johnson v. Geffen,* 111 U.S.App.D.C. 1, 3, 294 F.2d 197, 199 (1960) (degree of specificity required to raise an issue in a pretrial statement is whether the pretrial statement "raise[s] [the] issue 'with sufficient certainty and clarity to appraise the trial court and the opposing de-

fendant of what they may expect in the course of the trial' ")). In answering this question, I would apply the principle, adopted by many courts in recognition of the harsh consequences of not including an issue in a pretrial statement, favoring liberal construction of the pretrial statement. *See Century Refining Co. v. Hall,* 316 F.2d 15, 20 (10th Cir.1963) (pretrial statement should be "liberally construed to embrace all of the legal and factual theories inherent in the issues defined therein."); *Geremia v. First Nat'l Bank of Boston,* 653 F.2d 1, 5 (1st Cir.1981) (quoting *Rodrigues v. Ripley Indus., Inc.,* 507 F.2d 782, 787 (1st Cir.1974)); *Trujillo v. Uniroyal Corp.,* 608 F.2d 815, 818 (10th Cir.1979) (same); 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1527, at 283 & n. 23 (1990). This seems particularly appropriate in litigation where the nature of the dispute between the parties is uncomplicated. Explaining the purpose of this rule, one court warned that:

> Any other construction of the pre-trial order would tend to unduly constrict the trial of the case and defeat the central and salutary purpose of the [civil court rules] to insure the trial of every lawsuit on its merits. It is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality. We must not allow ourselves to construe the pretrial order in the spirit of a common law pleading.

*Century Refining Co. v. Hall, supra,* 316 F.2d at 20.

In addition, I would apply the rule in *Johnson v. Geffen, supra,* 111 U.S.App. D.C. at 4, 294 F.2d at 200, that "upon a motion for [a] directed verdict, the pretrial statement should be read in the light most favorable to [the plaintiff]." Because the practical effect of taking the issue away from the jury is the same in granting a defendant's motion for judgment n.o.v., the same principle applies in the instant case.

Accordingly, upon viewing the pretrial statement in the light most favorable to Ms. Adams, and in keeping with the principle favoring liberal construction of pretrial statements, I conclude that Ms. Adams'

pretrial statement adequately raises the CPPA issues. *Conlon v. Tennant, supra,* 110 U.S.App.D.C. at 142, 289 F.2d at 883 ("with sufficient certainty and clarity to appraise the trial court and [A.B. & A.] of what they may expect in the course of the trial") (citation omitted). Her pretrial statement referred to the Consumer Protection Procedures Act by name, and asserted that A.B. & A.'s liability stems, *inter alia,* from its decision to "abandon [its] work when [she] complained about [its] failure to perform as agreed." Further, her pretrial statement included a specific request, as an alternative to punitive damages, for treble damages under D.C.Code § 28–3905(k)(1), a provision of the Consumer Protection Procedures Act that provides, in pertinent part:

(k)(1) Any consumer who suffers any damage as a result of the use or employment by any person of a trade practice ... may bring an action ... to recover ... (A) treble damages....

Since § 28–3905(k)(1) merely provides a complaint procedure for unlawful trade practices listed under § 28–3904, the pretrial statement's reference to § 28–3905(k)(1) was sufficient to inform the trial court and A.B. & A. of Ms. Adams' claims that A.B. & A. violated the statute, and more specifically (as explained in Part II) § 28–3904(n) and (x). Although § 28–3904 lists 26 unlawful trade practices, this would not prevent the trial judge or A.B. & A. from being adequately informed of the issues related to the specific subsection upon which Ms. Adams relied since the pretrial statement's theory of liability—that "[A.B. & A.] abandoned their work when plaintiffs complained about their failure to perform as agreed."—closely tracks the language of subsection § 28–3904(n) and describes a claim under § 28–3904(x).

As noted, Ms. Adams' counsel could have made matters a lot simpler by including the exact statutory subsection in the pretrial statement. But that is not the standard by which Ms. Adams' pretrial statement is to be evaluated in ruling on a motion for a directed verdict or for judgment notwithstanding the verdict. Although the trial judge found that A.B. & A. and the trial court were surprised to learn of Ms. Adams' statutory claims during their conference in chambers, the effect is to suggest that neither recalled the efforts of Ms. Adams' counsel to elaborate on the nature of her statutory claims much less that Ms. Adams' pretrial statement referred to the fact she was asserting claims under the Consumer Protection Procedure Act, including treble damages under the Act. While the rule against raising issues not contained in the pretrial order is designed to prevent "surprise," *Redding v. Capital Cab Co., supra,* 284 A.2d at 55, the surprise that is meant relates to the unfairness that stems from forcing a defendant to defend against an issue of which he or she was not aware. Neither at trial nor on appeal does A.B. & A. point to any issues under the Consumer Protection Procedure Act claims that were not otherwise present in the case. Furthermore, A.B. & A. admitted during oral argument that the statutory claims would not have altered its defense.

## IV.

Finally, the majority concludes that the statutory issues were not actually litigated. *See* majority opinion at 861–862. *See also* note 7, *supra.* However, to reach this conclusion the majority is forced to ignore the parties' agreement about the only factual dispute in the case. Ms. Adams' testimony was to the effect that A.B. & A. had ceased work and had not provided the electrical system for which she had contracted. This was evidence of violation of D.C.Code §§ 28–3904(n) and (x). *See* note 8, *supra.* A.B. & A. took the position that the fault for its failure to complete the work was hers because she had prevented them from completing the job. That was the single factual issue submitted to the jury on the verdict form.

Given the nature of the parties' dispute and the judge's decision to submit the statutory claims to the jury, once the jury determined that Ms. Adams had not prevented A.B. & A. from completing the contract, it necessarily followed that A.B. & A. had ceased work on the electrical system and failed to provide the system for which

she had contracted. Indeed, the judge so instructed the jury. Since A.B. & A. did not object specifically to submission of that factual question alone to the jury (although it clearly preserved its general objection to any statutory claims being presented to the jury), it is hardly in a position to claim that, upon such a finding, the jury did not necessarily find for Ms. Adams on the statutory claims. The record also shows that Ms. Adams' counsel had tried on several occasions to specify the nature of the statutory claim and also tried to get a more specific instruction on § 28–3904(n). *See* note 6, *supra.* Finally, the arguments of counsel to the jury addressed both statutory claims.

Under these circumstances, if the statutory claims were not presented to the jury on the basis of the single disputed factual issue, then it is difficult to understand on what basis the judge permitted the case to go to the jury. Since A.B. & A. has conceded that its defense would not have changed if the statutory subsections had been explicitly pleaded, it cannot reasonably be stated that A.B. & A. "was deprived of their 'day in court' as to these claims." Majority opinion at 862. Therefore, I would conclude that the record shows that the statutory claims were actually litigated.

Accordingly, because I would reverse and remand the case to the trial court with instructions to reinstate the jury verdict, I respectfully dissent.